1          UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF TEXAS
2                 HOUSTON DIVISION

3  UNITED STATES OF AMERICA      ()        CRIMINAL ACTION
                                 ()        NO. H-09-453
4  VS.                           ()
                                 ()
5  JOHN BUTLER                   ()
   WILLIAM HORNBEAK              ()
6  JAMINE LAKE                   ()        HOUSTON, TEXAS
   ANDRE MCDANIELS               ()        JANUARY 7, 2013
7  RONNIE PRESLEY                ()        2:04 P.M.

8

9            TRANSCRIPT OF SENTENCINGS
             AND MOTIONS FOR CONTINUANCE

10
          BEFORE THE HONORABLE LYNN N. HUGHES
11


12
   APPEARANCES:
13
   FOR THE GOVERNMENT:        Ms. Sherri Zack
14                            Assistant United States Attorney
                              1000 Louisiana, Suite 2300
15                            Houston, Texas  77002

16 FOR JOHN BUTLER:           Mr. Athill Muhammad
                              Attorney at Law
17                            2323 Caroline, Suite 1000
                              Houston, Texas  77004
18
                              Mr. Alphonso Anderson
19                            Ledbetter Anderson & Associates
                              2323 Caroline
20                            Houston, Texas  77004

21 FOR WILLIAM HORNBEAK:      Mr. David Kiatta
                              Attorney at Law
22                            77 Sugar Creek Center Blvd
                              Suite 565
23                            Sugar Land, Texas  77478

24 FOR JAMINE LAKE:           Mr. James R. Alston
                              Attorney at Law
25                            914 Preston, Suite 3N
                              Houston, Texas  77002

1

2    FOR ANDRE MCDANIELS:        Mr. Nathan Mays
                                Attorney at Law
3                               402 Main, Suite 300
                                Houston, Texas  77002
4

5    FOR RONNIE PRESLEY:         Mr. John Patrick Smith
                                Attorney at Law
6                               2726 Bissonnet, Suite 240-210
                                Houston, Texas  77005
7

8
     COURT REPORTER:             Anita G. Manley
9                                Official Court Reporter
                                515 Rusk, 8th Floor
10                               Houston, Texas  77002

11

12

13
     Proceedings recorded by stenographic means, transcript produced
14   by computer.

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  United States of America versus John

3    Butler, William Hornbeak, Jamine Lake, Andre McDaniels, and

4    Ronnie Presley.

5          MS. ZACK:  Good afternoon, Your Honor.  Sherri Zack on

6    behalf of the United States.

7          THE COURT:  Good afternoon.

8              Mr. Anderson, --

9          MR. ANDERSON:  Good morning, Judge.

10         THE COURT:  -- where's my friend, Mr. Washington?

11         MR. MUHAMMAD:  Your Honor, Athill Muhammad standing in

12   the stead of Mr. Washington on behalf of Mr. Butler.

13             Mr. Washington is ill.  In fact, he -- for the

14   record, Mr. Washington was hospitalized on Thursday with --

15   having been diagnosed a hiatal hernia, several ulcers, and the

16   possibility of heart attack.

17         THE COURT:  Of what?

18         MR. MUHAMMAD:  A heart attack.  He's been released

19   from the hospital yesterday afternoon and asked me to stand in

20   his stead.

21         THE COURT:  That's fine.  We could have taken your

22   word that he was sick.

23         MR. MUHAMMAD:  Yes, sir.

24         THE COURT:  Mr. Washington, over a longer period of

25   time than anybody but me in this room, has been a faithful,

1   courageous lawyer.  I'm just wanting to know how sick he was so

2   I could take appropriate action and order him well.  So, you go

3   back and report to him that he's ordered to get well.

4          MR. MUHAMMAD:  I shall.  And with Your Honor's

5   indulgence, after the introductions, we would like to make an

6   oral motion on behalf of Mr. Butler concerning these

7   proceedings, if we may.

8          THE COURT:  Certainly.

9          MR. MUHAMMAD:  Thank you.

10          MR. ALSTON:  James Alston for Mr. Lake, Your Honor.

11          THE COURT:  Wait a minute.  Let's go ahead.  And I

12   think I know what's coming.  He's enjoyed all this he can

13   stand.

14          MR. MUHAMMAD:  Oh.  Yes, sir.  Because of Mr.

15   Washington's illness, Mr. Butler was concerned for one reason,

16   as to a possible continuance on this matter, because he feels

17   more comfortable with Mr. Washington being here to advise him.

18   Accordingly, and because Mr. Washington is not able to meet

19   with Mr. Butler since his illness, that's --

20          THE COURT:  With Mr. Butler.  I got the idea.  Shorten

21   it.

22          MR. MUHAMMAD:  Thank you.

23          THE COURT:  I start impatient and lose ground.

24          MR. MUHAMMAD:  In addition, Your Honor, it has been

25   brought to my attention yesterday that Mr. Butler for the first

1  time had seen the presentence report and was not able to

2  properly review it.  And I don't know why he had not been able

3  to see the presentence report, but Mr. Butler would like a

4  continuance on this.

5      THE COURT:  Well, if you're dealing with the Post

6  Office and the Bureau of Prisons working in conjunction, that

7  pretty well answers why he hadn't seen it.  I don't know why.

8      Mr. Butler.

9      DEFENDANT BUTLER:  Yes, sir.

10      THE COURT:  You've made a deal with the Government,

11  right?

12      DEFENDANT BUTLER:  Yes, sir.

13      THE COURT:  If you knew that I was inclined to honor

14  the arrangement you've made with the Government, other than

15  what you tell me that you think -- some personal stuff -- the

16  rankings and all don't really matter if I honor the agreement.

17  They calculate all that math.

18      And, so, if you want a continuance, you may have

19  it; but I think, unless somebody misbehaves this afternoon, I

20  don't see any reason not to permit -- I've read all the stuff,

21  and there doesn't seem to be any reason not to honor the

22  arrangement you made.

23      DEFENDANT BUTLER:  If I may indulge the Court?

24      THE COURT:  Yes, sir.

25      DEFENDANT BUTLER:  If I may?  Because I still don't

1    have a copy.  I was only allowed to peruse a copy for about ten

2    minutes.  It's about 30 pages long.

3        (Defendant Butler and his counsel confer.)

4            THE COURT:  Yes, sir?

5            DEFENDANT BUTLER:  I have multiple concerns with the

6    presentencing report, the numbers.

7            THE COURT:  Just give me an idea.  You don't have to

8    quote it.

9        (Defendant Butler and his counsel confer.)

10           DEFENDANT BUTLER:  Mostly, sir, the calculating

11   concerns.

12           THE COURT:  But I'm going to ignore those in favor of

13   what you and the Government have agreed to.  That was my point.

14           DEFENDANT BUTLER:  Okay.

15           THE COURT:  We can mess with these numbers a little

16   bit one way or the other and it's not going to change the

17   outcome because you agreed to 96 months.

18           DEFENDANT BUTLER:  Sir, I believe you've been an

19   honorable man and I'll do whatever it is you -- you want.

20           THE COURT:  No.  I'm just -- if you want to go back

21   and study this, talk to both of them -- I hope Mr.

22   Washington -- and then you come back, I think the answer is

23   going to be the same.  That's not a ruling.  I'll do whatever

24   you want.  So, you think about it, and we'll see about some of

25   these other folks.

1     All right.  While I'm doing these guys, the

2 marshal is going to take Mr. Butler down to my jury room.

3     MR. MUHAMMAD:  Yes, sir.

4     THE COURT:  And if you'll come around to the hall

5 door, my law clerk will let you in and show you where they've

6 taken him.

7     MR. MUHAMMAD:  Thank you, Your Honor.

8     THE COURT:  And y'all can talk.

9     MR. MUHAMMAD:  Thank you.

10     THE COURT:  I'm going to send you to the jury room so

11 you can talk to them.  They'll meet you down there.

12     Mr. Alston -- or let me get everybody.

13     Do each of you solemnly swear the

14 testimony that -- the testimony that each of you will give will

15 be the truth, the whole truth, and nothing but the truth?

16     THE DEFENDANTS:  Yes, sir.

17     THE COURT:  All right.  We have Mr. Alston and then we

18 have somebody claiming to be John Patrick Smith?

19     MR. SMITH:  Yes, sir.

20     THE COURT:  And Nathan Mays?

21     MR. MAYS:  Yes, Your Honor.

22     THE COURT:  And David Kiatta?

23     MR. KIATTA:  Yes, sir.

24     THE COURT:  What we really know is nobody would

25 pretend to be Mr. Smith except Mr. Smith.

1          MR. SMITH:  That's correct.

2          THE COURT:  All right.  You've heard what I've said to

3    Mr. Butler.  And that would leave, I think, your telling me

4    anything you want to about yourselves or these crimes or

5    anything else.  The only real variable is restitution.

6              But, Mr. Alston, do you think we could just skip

7    to that?

8          MR. ALSTON:  Yes, Your Honor.

9          THE COURT:  I'm going to ask him a couple of questions

10   about having talked to you and stuff.

11         MR. ALSTON:  Yes, Your Honor, I believe we can.

12         THE COURT:  Mr. Smith, do you think Mr. Presley would

13   be comfortable doing that?

14         MR. SMITH:  Yes, Your Honor.

15         THE COURT:  Mr. Mays?

16         MR. MAYS:  Yes, Your Honor.

17         THE COURT:  And Mr. Kiatta?

18         MR. KIATTA:  Can you repeat the question, Judge?

19         THE COURT:  Since we have an agreement and I'm

20   inclined to honor it, the only thing that remains are --

21   there's some claims for restitution.

22         MR. KIATTA:  Yes, sir.  I --

23         THE COURT:  And then whatever they want to say about

24   themselves or anything they want to.

25         MR. KIATTA:  If I may, Judge?  I thought I had gone

1  over the PSR with Mr. Hornbeak.  He says that I have not and he

2  would like additional time to review it.

3          THE COURT:  So, what are we talking about?  Thirty

4  minutes or....

5          DEFENDANT HORNBEAK:  No, sir.  I would like to have

6  just -- I haven't -- this is the first time I've seen it,

7  today.  I think maybe over the holidays, we just maybe got

8  mixed up.  I haven't seen it until --

9          THE COURT:  I know at the Bureau of Prisons they put a

10  lot into the holidays.

11          DEFENDANT HORNBEAK:  So, I just feel totally

12  unprepared, you know.

13          THE COURT:  Well, the point is you don't need to

14  prepare about what's in there.  You need to tell me about what

15  you think and know and --

16          DEFENDANT HORNBEAK:  Your Honor, I didn't even know we

17  were coming to court today.  I don't even have a statement

18  to -- didn't even think about a statement or anything because I

19  didn't even know we were --

20          THE COURT:  Okay.

21          DEFENDANT HORNBEAK:  If you don't mind, I would

22  appreciate it.

23          THE COURT:  You go sit down.

24              And Mr. Kiatta, why don't you stand by and see

25  what happens.

1        MR. KIATTA:  Yes, sir.

2        THE COURT:  Mr. Hornbeak, if you'd --

3        MS. ZACK:  Your Honor, even if Mr. Hornbeak is not

4   sentenced today or Mr. Butler, there is a victim here.

5        THE COURT:  No, I'm going to -- we've still got three

6   to go.

7        MS. ZACK:  I just want her to be able to speak today

8   so that she doesn't then have to come back for each of the

9   other ones.

10        THE COURT:  No, we're not doing that.  We're going to

11   make a record about that.

12        MS. ZACK:  Thank you.

13        THE COURT:  Although, maybe we ought to -- when we get

14   to that, we'll fetch one of Mr. Butler's lawyers.

15        MR. MAYS:  Your Honor, Nathan Mays on behalf of Andre

16   McDaniels.

17              I just want to make the Court aware, because Mr.

18   McDaniels has another pending case in front of Judge Rosenthal

19   that is in some way related -- and I think Your Honor will

20   remember from the time that we took his plea, I advised him at

21   that point in time that I didn't believe pleading guilty to the

22   charges in this case would affect his punishment or him being

23   convicted in that case.  And I've given him that advice, and I

24   stand by it.

25              And I think Your Honor actually asked the U.S.

1    Attorney their opinion and instructed them to give him a

2    letter, essentially, to that effect.

3              THE COURT:  Did I do that?

4              MS. ZACK:  You asked that --

5              THE COURT:  Well, you wouldn't have done it --

6              MS. ZACK:  -- that he -- in the other case.  And I

7    don't know if the other AUSA has supplied him with anything

8    that says that; but I agree with what Mr. Mays is saying, that

9    the case -- this does not affect the other one.

10             MR. MAYS:  And for purpose of the record, on behalf of

11   Mr. McDaniels, I've advised him that I believe filing

12   objections to this presentence report in this case is

13   unnecessary in light of our 11(c)(1)(C) agreement.  And he's

14   followed that advice and we have not filed objections.  And

15   I've informed him and advised him that the findings with

16   respect to that presentence report will not be held against him

17   in that other case because it's for a completely different

18   offense.  And his concern is that by not objecting in this

19   case, even though it won't affect what the Court does here --

20             THE COURT:  Then object.

21             MR. MAYS:  -- it might --

22             THE COURT.  Object, quick.

23             MR. MAYS:  All right.  Well, we object.  Do you want

24   me to do it orally or in writing?

25             THE COURT:  Orally, unless you have a printer handy.

1    MR. MAYS:  Your Honor, we would object to everything

2    that's contained in the presentence report with respect to

3    factual allegations that are made regarding Mr. McDaniels

4    committing acts of violence against multiple women that are

5    contained here.  And he admits, as he did at the time of his

6    plea, to conspiring to participate in sex trafficking, under 18

7    U.S.C. Section 371.

8    THE COURT:  I'm only going to sentence him for what he

9    admitted to.  And in none of the cases by accepting the

10   agreement am I adjudging any of the contents of the presentence

11   report to be true by a preponderance.

12         Now, the presentence report is prepared by some

13   of the finest probation officers around and they're very

14   thoughtful and they're very thorough.  And, so, if their little

15   brother had complained about some toy, it would go in there.

16   That's what they're supposed to do, is give me the story.  And,

17   so, I'm not endorsing all that stuff.  We'd be here until July

18   4th if we had to go through each allegation.

19         And, frequently, defendants like to discuss each

20   of their earlier convictions.  Having read the reports, I see

21   no reason to vary from the deal.  And the Government and the

22   defendants each reached that after an independent review of all

23   this stuff.  So, other than the precise facts of the count to

24   which they pleaded, I'm not making any findings other than

25   globally that the sentence is consistent with the Sentencing

1    Guidelines and the criminal law.  The objection is overruled.

2          MR. MAYS:  Your Honor, I'm going to request a copy of

3    the transcript from the plea hearing after this is completed

4    just -- wherein the Court asked the United States to put in

5    writing the fact that it wouldn't affect it, for purposes of

6    the future proceedings.

7          THE COURT:  I want you to do that because we're all

8    operating -- we have a consensus.  I believe I said at the time

9    I have no idea whether that would bind or should bind anybody

10   else because I don't know enough.  I know the nature and I --

11   at one time I knew enough of the details to know it shouldn't

12   be brought here.  So, we're not trying to sandbag you.  He's

13   only punished here.  I don't mean for you to be punished in

14   Iowa state court because of what you did here.  We're

15   concluding this.

16         All right.  Any other problems?

17         Mr. Lake, is there anything you want to tell me

18   before I pass judgment on you?

19         DEFENDANT LAKE:  Yes, sir, Your Honor.

20         First off, I'd like to thank you for allowing me

21   the opportunity to speak in front of everyone.  I take full

22   responsibility for pleading out.  My lawyer, Mr. Alston, is a

23   great attorney and I appreciate everything he's done for me.

24   At this point I don't have any reason to lie, so what I'm about

25   to say is the honest-to-God truth, Your Honor.

1      On October 4, 2012, you asked me who did I
2   conspire with to transport ███████████.  My answer was, "My
3   co-defendants."  But that's not the truth, Your Honor.  And
4   when I answered the question, I was a little nervous and my
5   mind was boggled.  So, today I want to apologize to you and I'd
6   like to apologize to my co-defendants.
7      Also -- also, I'd like to say, if I'm not
8   ruffling any feathers, that when I pled out to the count with
9   ████████, Your Honor, the statement was untrue.  I also
10  pled out to a count with ███████████, Your Honor, and I
11  never met that person before in my life.
12          THE COURT:  You don't have to meet a co-conspirator or
13  a victim.
14          DEFENDANT LAKE:  Right.
15          THE COURT:  If you're working with somebody --
16          DEFENDANT LAKE:  Right.
17          THE COURT:  -- and you have a common plan, you're
18  responsible for what he does even if he doesn't ask you first
19  or introduce you to the victim.
20          DEFENDANT LAKE:  I understand, Your Honor.
21          THE COURT:  But, Mr. Lake, you're now telling me under
22  oath that what you told me under oath before was wrong?
23          DEFENDANT LAKE:  Yes, sir, Your Honor.
24          THE COURT:  And you knew it was wrong at the time?
25          DEFENDANT LAKE:  I spoke -- I was just nervous when I

1    spoke.

2            THE COURT:  No, no.  Don't weasel.

3            DEFENDANT LAKE:  Yes, sir.  Yes, sir, Your Honor.

4            THE COURT:  It's not going to do you any good.

5            DEFENDANT LAKE:  Right.

6            THE COURT:  Standing up here after you stood there and

7    had a lawyer for -- it's a three-year-old case.  You've had

8    every moment.  You could have made all the notes you wanted.

9    You could have given it to Mr. Alston in writing.  You could

10   have done anything you wanted to.  Your being nervous is not an

11   excuse.

12           DEFENDANT LAKE:  Yes, sir.

13           THE COURT:  What you're doing is -- this indeterminant

14   hanging around a detention center is no fun, but facing six or

15   seven more years in prison will become absolute here in a

16   minute.  I asked you factual questions.  You answered them.

17           DEFENDANT LAKE:  Yes, sir.

18           THE COURT:  Why should I believe you now?  You told me

19   one thing under oath then.  You're telling me something else

20   now.

21           DEFENDANT LAKE:  Yes, sir.  It was an honest mistake

22   and I apologize.

23           THE COURT:  How do you mistake a direct question?

24           DEFENDANT LAKE:  I don't know, Your Honor.  I was just

25   nervous.  I apologize, though.

1    THE COURT:  So, you're innocent; that's what you're

2  telling me?

3    DEFENDANT LAKE:  No, sir.  No, sir.

4    THE COURT:  Well, you just told me you didn't do --

5         Ms. Zack, help me.

6    MS. ZACK:  I believe what he was saying is that he

7  didn't conspire with the co-defendants to commit the crime

8  against ███████████.  I guess he's suggesting he did that all

9  on his own, I don't know, and that he didn't know one of the

10  other victims.

11         But, as Your Honor says, he doesn't need to know.

12  It's just that he facilitated the crime committed against that

13  victim with a co-defendant.  In this case, I believe that was

14  Ronnie Presley.

15    THE COURT:  Is that what you're saying?

16    DEFENDANT LAKE:  Yes, Your Honor, that's what I'm

17  saying.

18    THE COURT:  Well --

19    MS. ZACK:  That's what I understood.  I don't know if

20  that's what he said or not.

21    THE COURT:  That's sort of, that he didn't -- he cast

22  unfair blame on his co-defendants.

23    DEFENDANT LAKE:  No, no, sir.  What I'm trying to say,

24  Your Honor -- and I'm not trying to interrupt you -- what I'm

25  trying to say is that when I said "my co-defendants," I didn't

1 mean it because, the truth is, I didn't conspire with my

2 co-defendants to transport ██████████.

3       THE COURT: What did you do with ███████?

4       DEFENDANT LAKE: I'm the only one that took ███████

5 ██████, Your Honor.

6       THE COURT: Okay.

7       DEFENDANT LAKE: So, I made a mistake. Honestly, I

8 mean, I made a mistake by saying that.

9       THE COURT: All right. And was your bringing her here

10 or taking her there, whichever it was --

11       DEFENDANT LAKE: Yes, sir.

12       THE COURT: -- was it something you'd been doing that

13 with some of these other folks with other girls?

14       DEFENDANT LAKE: No, sir.

15       THE COURT: You hadn't been working with Hornbeak or

16 any of these other people?

17       DEFENDANT LAKE: No, sir, not conspiring with them as

18 far as taking people anywhere, Your Honor.

19    (Defendant Lake and his counsel confer.)

20       DEFENDANT LAKE: I was told I conspired -- I would say

21 that I conspired with them to do things here in Houston, Your

22 Honor.

23       THE COURT: But doing things had to do with -- let's

24 be frank -- being pimps, right?

25       DEFENDANT LAKE: Yes, sir, Your Honor.

1       THE COURT:  Isn't that what you were doing?  That's

2  what you pleaded to.

3       DEFENDANT LAKE:  Yes, sir, Your Honor.

4       THE COURT:  That you were -- you were moving girls

5  around Houston, right?

6       DEFENDANT LAKE:  Yes, sir, Your Honor.

7       THE COURT:  And you didn't discuss with any one of the

8  other defendants that you were going to take one girl to -- was

9  it to Vegas -- to Las Vegas?

10      DEFENDANT LAKE:  To Kansas.

11      THE COURT:  Back to Kansas?

12      DEFENDANT LAKE:  Yes, sir.

13      THE COURT:  But that's consistent with what you-all

14  were doing, was --

15      DEFENDANT LAKE:  Yeah.

16      THE COURT:  -- acquiring girls and moving them to the

17  markets and collecting money.  And, so, that's consistent with

18  the charge that you conspired, and she is an instant of the

19  conspiracy where she just happened to go interstate.  So, I

20  don't think that changes anything.

21      DEFENDANT LAKE:  Yes, sir.

22      THE COURT:  Other than nobody else that seemed to be

23  part of the general scheme of a --

24      MS. ZACK:  It doesn't affect the conspiracy, Your

25  Honor, that the other individuals may or may not have known

1    about the transportation of ███████, who is the sole

2    subject of the other substantive charge against Mr. Lake.

3         THE COURT:  All right.  So, as you-all were

4    cooperating among yourselves -- I mean, it doesn't mean there

5    was any formal arrangement, but as a cluster of pimps, you all

6    were working together; is that right?

7         (Defendant Lake and his counsel confer.)

8         DEFENDANT LAKE:  Yes, sir, Your Honor.

9         THE COURT:  And, so, you happened to work interstate.

10   The rest of them were working intrastate.  Except some of the

11   others -- I mean, just -- where they have to isolate a

12   particular woman who was taken interstate, because I want to

13   know that there's really a fact and not just "it happens all

14   the time" kind of claim.  So, that's why we were so particular.

15   I tried to be particular about who you took, where, when, and

16   that sort of thing.

17              All right.  Anything else?

18         DEFENDANT LAKE:  That's it, Your Honor.  Thank you.

19         THE COURT:  Mr. Mays.

20         MR. MAYS:  Sir?

21         THE COURT:  Is he ready to talk if he'd like to?

22         MR. MAYS:  Yes, Your Honor.

23         THE COURT:  Anything you want to tell me?

24         DEFENDANT MCDANIELS:  Your Honor, what I would like to

25   know if it would be possible for you to order the transcripts

1  from my plea and, you know, whatever happens here, the

2  transcripts from here today, because my whole situation here is

3  about my other charge.  Because this situation here, it's --

4  it's a little bit much.  I mean, there's so many ifs and ands.

5  And I don't want to go and, you know, ruffle no feathers or get

6  my feathers ruffled about this situation.

7          THE COURT:  No, but, you know, in the honest world,

8  when you do good three or four times, it may add up a little

9  bit.  Might even add up totally.  But when you do bad, they're

10 multiplied against each other.  Do you notice that?

11         DEFENDANT MCDANIELS:  Yes, sir.

12         THE COURT:  And that's --

13         DEFENDANT MCDANIELS:  I mean, I definitely accept full

14 responsibility.

15         THE COURT:  No, no.  I'm just saying that it's just an

16 unfortunate --

17         DEFENDANT MCDANIELS:  Like I said, you know, when it

18 comes to this particular case, you know, my thing is, I'm not

19 saying that I'm innocent.  I pleaded guilty; so, therefore, I

20 have admitted to doing something wrong.  The stage has been set

21 by the Government to portray this situation to be something a

22 lot worse than what it should be.  So, I'm not going to go into

23 all that, you know.  Like I said, I'm guilty of what I've done.

24 I pleaded guilty to that and I accept that.

25              Me, I'm concerned about -- if it's possible you

1 could order the transcripts from my plea. And I apologize for

2 taking up the Government's time.

3       THE COURT: No. We'll get the plea of guilty. We'll

4 get today's hearing. And I don't know that we had any other

5 direct conversations.

6       MR. MAYS: I don't believe so, Your Honor.

7       THE COURT: We'll -- we'll get you those.

8       DEFENDANT MCDANIELS: Okay. Like I said, I apologize

9 for taking your time, you know.

10       THE COURT: Mr. Mays, are you representing him in the

11 other one?

12       MR. MAYS: I'm not, Your Honor, but I will order --

13       THE COURT: You will.

14       MR. MAYS: -- both transcripts today.

15       THE COURT: And get them to whoever that is.

16       MR. MAYS: Yes, sir.

17       THE COURT: Don't send it to him in the prison because

18 he'll probably never get them.

19             Anything else you want to tell me?

20       DEFENDANT MCDANIELS: No, sir.

21       THE COURT: Mr. Presley, are you ready to talk?

22             Mr. Smith, are you ready for him to talk?

23       MR. SMITH: Mr. Presley is ready to be sentenced. We

24 have filed our objections. We have filed a sentencing

25 memorandum in which we have asked the Court to follow the

1    recommendation.  And we're ready to be sentenced, Your Honor.

2              THE COURT:  Do you have anything else you want to say?

3              DEFENDANT PRESLEY:  I accept all responsibility for my

4    part.  And my time of incarceration is being put to good use to

5    better myself, and I'm ready to move on with my life and do

6    what's right and get back out there and do what I have to do.

7              THE COURT:  Okay.  Thank you.

8                   Mr. Butler, counsel, what have you decided?

9              MR. MUHAMMAD:  He is still desirous, Your Honor, of

10   having the opportunity to review the presentence report and

11   would like a continuance.

12             THE COURT:  All right.  We'll do that.

13             MR. KIATTA:  Mr. Hornbeak is the same, Your Honor, if

14   it please the Court.

15             THE COURT:  All right.  No wonder I couldn't see him.

16   You were in the way.

17                  But I want you-all to wait because we're going to

18   discuss restitution and we will not do it again.  So, if you

19   have anything about the restitution, we'll discuss it now.

20                  All right.  Ms. Zack.

21             MS. ZACK:  Yes, Your Honor.

22             THE COURT:  I've read the written victim impact

23   statements, and I understand Jessica Ford would like to

24   testify?

25             MS. ZACK:  That is correct, Your Honor.

1    THE COURT: All right. Would you have her come up and
2  would you get out of the way?

3          Would you raise your right hand?

4          Do you solemnly swear the testimony that you give
5  will be the truth, the whole truth, and nothing but the truth?

6    THE WITNESS: Yes, sir, I do.

7    THE COURT: Would you sit down, please, ma'am.

8      Ms. Zack.

9    JESSICA FORD, GOVERNMENT'S WITNESS, SWORN

10            DIRECT EXAMINATION

11  BY MS. ZACK:

12  Q. Please tell the Court what it is that you came here today
13  to say and express on behalf of yourself having been named as a
14  victim in this case.

15  A. I was hurt. I was hurt very badly by one or more of these
16  men.

17  Q. When you say "hurt," do you mean physically or emotionally?

18  A. Physically, mentally, emotionally, socially. I was not
19  allowed to mess with my family. I was promised by Mr. Butler
20  that he would help me get my children.

21          When I came to Mr. Butler, he made promises to me
22  that he would give me the life that I deserved. Mind you, I
23  was a victim of domestic violence all through my life. My
24  family treated me horribly. And when I got into this life with
25  these men, they asked me questions like where did I want to go

1  with my life, what did I want to do with my life, did I want to

2  go to college, did I want to be part of a big organization?

3          I wanted to be -- I had a dream, basically, and I

4  wanted -- and the promises that were made to me was that they

5  would give me the life, that life that I deserved.  I lost my

6  children completely.  I relinquished my rights to my children

7  for the better sake of my children.  There was other girls that

8  I saw that had came that their children were actually taken

9  from them and was given to their families to take care of while

10  the women were actually there working.

11          I'm branded.  I'm branded on my back.  I had a

12  panther over half of the size of my back that I cannot cover.

13  Cannot.

14  Q.  Did you ask for that to be done to you?

15  A.  I was on drugs.  I was on drugs.  I was routinely beaten.

16  There was a particular time that I had ran away from John and

17  the other guys.  And I was looking for a job.  The only life

18  that I knew was the life that was provided for me by these men.

19  And, so, I was out hunting for a job and I went to a studio

20  that I did not know was currently owned by Andre McDaniels.  It

21  was called The Palace.

22          I went into this building looking for a job.  And

23  mind you, I didn't come out for a while.  I had Mr. McDaniels

24  and Mr. Lake and Mr. Hornbeak routinely beat me with an

25  extension cord.  I had a gun held in my mouth by Mr. McDaniels.

Not just one time.  It was multiple times.  I got

pistol-whipped at their house on Mulberry Lane.  I lost my

identity behind these men.  I'm still having trouble getting my

identity back, my name, my Social Security card.

My family routinely tried to come and save me

from these men.  I wasn't allowed to be in one house with one

particular man's woman -- women.  I had to be moved around from

different studio to different studio because I, quote, unquote,

caused problems.

I loved John Butler.  I'm here to say I took my

life back.  I've taken my life back.  It's taken me a lot.  I'm

still working on it every day.  Being in the same room with a

bunch of women at times is very hard.  I talk about my story

now.  I go live.  It doesn't matter.  To me, I'm out here

trying to save women from things like what these men did to me.

No woman deserves to be beat up, I don't care what they do.

I was a lost soul when I was a child.  I didn't

have a mom and a dad and brothers and sisters to love me.  I

was the black sheep, the one that was found under a rock.  And

when I found these men, I found a father figure in these men.

To me, Lake was there for me after I had surgery.  John Butler

took me to have surgery.  I had some things on me.  I had

caught a sexually-transmitted disease, and I had this stuff on

me.  I thanked Jamine Lake for taking care of me when John

Butler wouldn't.  I felt like he was caring about me.

1          Mind you, just a few days after that, he had a

2    girl named Destiny.  And I supposedly was trying to steal

3    Destiny from him to take him to John -- take her to John.  Mind

4    you, I got picked up by my ankles and was beat inside of Texas

5    Health Salon on Imperial Valley.

6          I don't understand why men do this, especially

7    these men, any men.  If you grow up in a good home and you have

8    a good family that's going to take care of you and you have

9    children that love you, why would you want to lose that?  Why

10   did you want to lose that?

11         I cared about you guys and your families.  I did

12   everything you asked me to do.  I was quiet.  I made the money

13   and I still never got nothing back -- besides Mr. Presley,

14   because I don't know you.  I was hurt and I feel like you

15   should pay for what you did, not just to me but to every one of

16   these girls that you hurt.  I don't think 96 months is enough

17   time for you guys.  If it is, please, God, get out and do

18   what's right.  Because, mind you, it has taken me everything in

19   my power to do what is right.

20         My babies mean the world to me.  John, you lied.

21   I lost my kids.  Don't worry.  I have them now in my life.  You

22   guys will never hurt me again, ever.  When you get out, I don't

23   care.  If you want to come find me, I don't care because God

24   has given me a new life.  And it is only by the Grace of God

25   that I am out here speaking to other women just like me that

1    are afraid.

2              I was afraid.  Every time I was with you guys, I

3    was afraid.  I could leave, but what was the cost behind me

4    leaving?  I didn't know anything any different.  I just want

5    you guys to step up and realize what you did.  Stop making

6    excuses.  Because when I made an excuse, it was a royal

7    beating.  Imagine being beat every time you lie, every time you

8    open your mouth.  Just imagine it, and maybe you'll understand

9    what you put me and these other girls through.

10             Thank you.

11        THE COURT:  Any questions?

12        MR. MAYS:  No, sir.

13        MR. ALSTON:  No, Your Honor.

14        THE COURT:  You may step down.

15             Would any of the defense counsel like to comment

16   on either of the two written statements?

17        MR. MAYS:  No, sir.

18        MR. ALSTON:  No, Your Honor.

19        MR. MUHAMMAD:  No, sir, Your Honor.

20        MR. SMITH:  No, Your Honor.

21        THE COURT:  Ms. Zack.

22        MS. ZACK:  Yes, Your Honor.

23        THE COURT:  I may have gotten my cases confused.  Were

24   any of the victims here housed by those charities in Minnesota

25   or wherever it was?  That was the other one?

1          MS. ZACK:  That's the other case.

2          THE COURT:  Okay.  Because that's a reimbursement

3  that --

4              And was there an agreement about restitution?

5          MS. ZACK:  Not that I'm aware of, Your Honor.

6          THE COURT:  Anybody else aware of one?

7          MR. ALSTON:  No, Your Honor.

8          MR. MUHAMMAD:  No, sir.

9          THE COURT:  Then I take the two written statements as

10  a victim impact statement and not a claim for restitution,

11  although one of them has a bunch of numbers in it.

12              All right.  Anything else from counsel?

13          MR. ALSTON:  No, Your Honor.

14          MR. SMITH:  No, Your Honor.

15          MR. ANDERSON:  No, sir, Your Honor.

16          THE COURT:  Mr. Lake, on the counts to which you have

17  pleaded guilty, on the one with a 60-month sentence, I sentence

18  you to 60 months and 96 months on the other.  And no

19  restitution, $10,000 fine, a $300 tax which Ms. Zack moves to

20  remit and it's granted.

21          MS. ZACK:  Yes, Your Honor.

22          THE COURT:  And Mr. McDaniels --

23          THE CASE MANAGER:  Supervised release.

24          THE COURT:  I'm going to do supervised release as a

25  lump.

1           THE CASE MANAGER: Okay.

2           THE COURT: Mr. McDaniels.

3           DEFENDANT MCDANIELS: Yes, sir.

4           THE COURT: Count 1, 60 months. On 3 and 8 -- yeah --

5 you had four?

6           MR. MAYS: Four.

7           MS. ZACK: Yes, Your Honor.

8           THE COURT: 3, 7 and 8, 96 months all concurrent,

9 $10,000 fine, $400 tax which Ms. Zack moves to remit.

10           MS. ZACK: Yes, Your Honor.

11           THE COURT: Are we in the wrong order?

12             Mr. Presley.

13           DEFENDANT PRESLEY: Yes, Your Honor.

14           THE COURT: 60 months on Count 1. On Counts 4, 6, 5

15 and 7, 96 months all concurrently, $500 supervised release

16 which she moves to remit, and a $10,000 fine.

17             Now, on the longer counts, 10 years of supervised

18 release. You must register as a sex offender. And I'm not

19 going to -- and you may not drink or use marijuana in

20 Washington, Colorado, and California. It's not technically

21 legal in California, but they have vending machines and service

22 stations with prescriptions in it.

23             I'm not getting moralistic about drug use. You

24 need your judgment. You may not think real well clean, sober,

25 unsmoked, but it's got to be better than what you do. So, none

1  of that.

2          Now, you generally will be required to do drug

3  and alcohol testing.  You will be generally ordered not to

4  violate the law.  So, obviously, I will order you not to

5  transport people for immoral purposes in interstate commerce or

6  beat people and all that other stuff, but those are new crimes.

7  So, if you commit any crimes after you get out for ten years --

8  I've got you for 18 years.  Well, you've already done two or

9  so.  Call it 15 years.  And I don't care what Mr. Alston says;

10  I'll probably still be here.

11          All of you are old enough to know better.  You've

12  tried the high life being the macho dude.  It didn't work out

13  so well for you.  The next time it will work out even more

14  poorly.

15          All right.  Mr. Lake, do you have any questions?

16          DEFENDANT LAKE:  No, sir, Your Honor.

17          THE COURT:  Mr. Presley?

18          DEFENDANT PRESLEY:  No, sir.

19          THE COURT:  Mr. McDaniels?

20          MR. MAYS:  Your Honor, I would ask the Court to

21  recommend that Mr. McDaniels be housed in Seagoville, the

22  federal prison there, to serve his sentence.

23          THE COURT:  Well --

24          MR. MAYS:  I understand it's only a recommendation.

25          THE COURT:  They don't even want me to recommend.

1   They quit ignoring me and told me to shut up.  So -- but, out

2   of curiosity, why?

3          MR. MAYS:  I think it's closest to some of his family

4   members who can go and visit him.  It's simply a matter of

5   trying to make it.

6          THE COURT:  Well, they're going to put you where --

7   we're an exporting state.  We have more than our share of

8   prisoners and less than our share of prisons.

9             It might be healthy for you to be sent to

10  Sandstone, Minnesota, or someplace where you will be locked up

11  with a completely different kind of people and all your little

12  games from South Texas won't work.  But they won't even let me

13  do that anymore.

14         MR. SMITH:  Your Honor, could you make a finding that

15  Kansas is the home of Mr. Presley?

16         THE COURT:  I don't know.  Is it?

17         MR. SMITH:  Yes, Your Honor.

18         THE COURT:  Crazy people come from Kansas.  If that's

19  your home -- and they'll get all this stuff, plus a whole bunch

20  more stuff about you, and they'll use that to decide what to do

21  with you.

22            Yes, ma'am?

23         THE PROBATION OFFICER:  Three years of supervised

24  release as to Count 1, ten years as to --

25         THE COURT:  I was not going to do three years and then

1   ten years concurrently.  That's kind of a waste.  But if you

2   want me to, I will.

3           THE PROBATION OFFICER:  Yes, Your Honor.

4           THE COURT:  All right.

5           THE PROBATION OFFICER:  Also, how would you like them

6   to pay the $10,000?

7           THE COURT:  Three years on your first count, which is

8   concurrent with the others, though it's an empty gesture.

9               I figure, what, six months after you get out,

10  start paying at $500 a month.  Is that doable?

11          MR. MAYS:  Yes, Your Honor.

12          MR. ALSTON:  Yes, Your Honor.

13          DEFENDANT LAKE:  Yes, sir.

14          THE COURT:  Don't prank with me on that.

15          MR. SMITH:  Your Honor, personally, 500 a month might

16  be a little high.  If we could maybe work that out with the

17  probation officers?

18          THE COURT:  We've got to have a starting place.  Do

19  you want to say 250 to start with, and then it will go up after

20  that?

21          MR. ALSTON:  Yes, Your Honor.

22          MR. MAYS:  Yes, sir.

23          THE COURT:  And as part of your supervised release,

24  you need to work.  That's one of the general requirements.

25  There's a whole list of them.  But you need to work someplace

1  where you either get a paycheck or you're the guy issuing

2  paychecks.  And you need to keep all the employment records for

3  yourself of every kind.  And if you're working in some field

4  where they like to pay people in cash, then file your

5  self-employment tax and do all the right stuff.  Everybody else

6  has to do it.  But try to get jobs where you get a regular

7  paycheck.

8          THE PROBATION OFFICER:  No authorization of a firearm

9  and DNA testing, Your Honor?

10         THE COURT:  Sure.

11         THE PROBATION OFFICER:  Thank you, Your Honor.

12         THE COURT:  But the firearm is pointless because

13  that's a new crime.  It's a state and federal crime for you to

14  possess a firearm.  That means have control over it

15  momentarily.  That doesn't mean you own it or use it.  And

16  that's a good law that you don't have a firearm.

17         MS. ZACK:  Your Honor, could you order that any

18  firearms that were seized during this case be forfeited to the

19  agency, to the FBI, for destruction?

20         THE COURT:  Do I have a list of them?

21         MS. ZACK:  No.  We can get one.

22         THE COURT:  I'll do that, but I want a list.

23         MS. ZACK:  I'll supply that in a supplemental motion

24  to the Court that I will run by each counsel.

25         THE COURT:  Well, just -- you've made your motion.

1   Get me an order.  And I don't know -- one of you-all the other

2   day sent me an order I had to send back three times to get the

3   descriptions of the firearms correctly.

4              MS. ZACK:  I will take care of it, Your Honor.

5              THE COURT:  All right.  You know what guns they're

6   talking about?

7              MR. MAYS:  I don't believe Mr. McDaniels had any guns

8   that were seized.

9              MS. ZACK:  I know Mr. Lake did, Mr. Hornbeak did.  I

10  don't know who else, off the top of my head.  That was it.

11             THE COURT:  To the extent that Hornbeak and Butler

12  have not concluded theirs --

13             MS. ZACK:  Correct.

14             THE COURT:  -- if any of them are theirs, I'll have to

15  do that later; but get me an order with all of them in it and

16  I'll check them off as we go down.

17             MS. ZACK:  Yes, Your Honor.

18             THE COURT:  All right.

19             MS. ZACK:  As to Mr. --

20             THE COURT:  Can I anticipate something?  Can we just

21  go ahead and ask them if they care about any of these firearms?

22             MR. KIATTA:  We do not, Judge.  I don't think -- one

23  of them -- there was one found in Mr. Hornbeak's house that he

24  did not own.

25             THE COURT:  So, he doesn't have any interest in it.

1    DEFENDANT HORNBEAK:  It's my cousin's.  It's my

2  cousin's.  He's military.  He just left it there.  He came

3  inside one time and left it.

4    THE COURT:  Well, get his cousin's name.

5    Do you remember what kind of weapon it was?

6    DEFENDANT HORNBEAK:  Yes.  It's a Glock -- I don't

7  know what --

8    THE COURT:  .40 caliber?  That's very trendy.  Just

9  contact the cousin.

10    MR. KIATTA:  Yes, sir.

11    MS. ZACK:  I'll work with Mr. Kiatta on that, Your

12  Honor.

13    THE COURT:  On that one.  Otherwise --

14    MR. MUHAMMAD:  Your Honor, Mr. Butler has no concerns

15  with respect to firearms.

16    THE COURT:  Okay.  So, the FBI will get us a list.

17  The only exception will be the Glock.  Put that on a

18  supplemental list.  Unless there are 17 Glocks and then we'll

19  have --

20    Get the best description -- well, he had one, but

21  we don't -- the FBI has a whole chest of guns.  They don't know

22  where they got them.  But separate --

23    MS. ZACK:  Yes, we will.

24    THE COURT:  -- the one from Hornbeak's house.  And the

25  rest of them put on one list, and we can go ahead and sign it

1  while we're --

2      MS. ZACK:  Yes, Your Honor.  I will submit it.

3      THE COURT:  But send it around to them, please.

4      MS. ZACK:  Yes.

5      THE COURT:  Any other problems?

6      MR. MAYS:  Your Honor, if you could recommend for Mr.

7  McDaniels that the Bureau of Prisons give him substance abuse

8  treatment while he's incarcerated.  He has a prior drug

9  conviction and asking the Court to make this recommendation.

10     THE COURT:  You don't think eight years in the big

11 house is a substance abuse program?  I've had guys do eight

12 years and take drugs the first week out.  And it's not the

13 substance.  The problem is wholly internal.  Short-term thrills

14 works better than the long-term consequences are bad.

15          I will suggest that.

16          They're going to test you and decide whether

17 you're a suitable candidate and stuff.  But, you know, guys,

18 it's up to you.  Counselors can't change you.  Your lawyers

19 can't.  I can't change you.  You've got to decide you don't

20 want to waste your life, destroy your life if you're using

21 drugs.

22          And we'll keep him at the Bureau of Prisons

23 pending his other case, right?

24     MR. MAYS:  Yes, sir.  He's going to remain, I believe,

25 at the Federal Detention Center until that case is concluded.

1        THE COURT:  Well, that's my intention, is that he stay

2   through whatever other problems he has and not be shipped off

3   and shipped back.

4               The rest of you will be shipped somewhere.

5        MS. ZACK:  Your Honor, as to Mr. McDaniels, the

6   Government would move to dismiss Counts 2, 12, and 15 of the

7   superseding criminal indictment that was filed on January 4th

8   of 2011.  And out of this group, this only applies to Mr.

9   McDaniels because he pled to that particular document.

10              Mr. Presley and Mr. Lake pled to the superseding

11  information that supplants the document.  So, there needs to be

12  no motion to dismiss as to them.

13       THE COURT:  All right.  You're sure it supplants it

14  totally?

15       MS. ZACK:  Yes.

16       THE COURT:  I never briefed that.

17       MS. ZACK:  I checked with the appellate people.

18       THE COURT:  Are your guys convinced that that's

19  enough?

20       MR. ALSTON:  Yes, Your Honor.

21       MR. SMITH:  Yes, Your Honor.

22       THE COURT:  Okay.  Yes, ma'am.

23              You all have the right to appeal.  You have the

24  right to appeal without having a lawyer and without paying

25  costs if you can't afford them.  There's a statement about

1    that.  Please read it.  If you understand it, sign it.

2             All right.  As you all figured out, it's all

3    inside the guideline range.

4             Oh, it's below the range?  Oh, it's below the

5    guideline range but by agreement.  And it adequately addresses

6    all of the requirements for sentencing in an ordered, just

7    society.

8             The 22nd.

9             MS. ZACK:  Of January?  I'm supposed to start a trial

10    with Judge Hoyt that day, but I can make someone else be here

11    if that's the day you want.

12             THE COURT:  Yes.

13             MS. ZACK:  Okay.

14             THE COURT:  Under no circumstances are you to mess up

15    Judge Lake's schedule.

16             MS. ZACK:  Judge Hoyt.

17             THE COURT:  Judge's Hoyt's schedule.  I'm sorry.  I

18    thought you said Lake.  But he's even closer.

19             MR. MAYS:  One last --

20             THE COURT:  I doubt it, but go ahead.

21             MR. MAYS:  There's been an order that has kept them

22    separate (indicating) in the FDC that I think the Government

23    had asked the Court to put in place.  And it causes a hardship

24    when their mother comes to visit them, family members come to

25    visit them.  Since they're separatees, they have to be visited

1   on different days at different times.

2           THE COURT:  Y'all are related?

3           MR. MAYS:  They are related.  Mr. Presley's cousin is

4   Mr. McDaniels.  Mr. Hornbeak and Mr. McDaniels are --

5           THE COURT:  All right.  It can be modified that on

6   family visits --

7           MS. ZACK:  Your Honor, I can't speak to any separation

8   order as to Mr. McDaniels on the other case, so.

9           THE COURT:  Oh.

10          MS. ZACK:  He needs to remain separated from all of

11  them.  At this point, I don't have a problem with Mr. Presley

12  or Mr. Lake associating with each other.  I would appreciate

13  the rest remain separate until you sentence Mr. Butler and Mr.

14  Hornbeak, and then the four of them can do whatever.

15          But Mr. McDaniels, the other case pending is not

16  my case.  I don't know.

17          THE COURT:  No, I don't want to -- so, talk.

18          MR. MAYS:  I think the separation order, from what

19  I've been able to find out, is from this case and not from the

20  other case from what I've been able to get out of the Federal

21  Detention Center, but....

22          THE COURT:  Well, other than I don't want you to

23  associate with a bunch of crooks, but it's kind of hard to be

24  in the Detention Center and avoid that.  But behave in prison,

25  too.  Don't wait until you get out to behave.  And, so, among

1  these three, I have no objection to their associating as long

2  as you behave yourselves.

3         But the other two need to wait until they're

4  sentenced.  And then, if Judge Rosenthal wants to separate you,

5  she can.  And I have no objection.

6         MR. MAYS:  Thank you.

7         THE COURT:  Anything else?

8         MR. ALSTON:  No, Your Honor.

9     (Concluding at 3:07 p.m.)

10

11  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, TO THE BEST
12  OF MY ABILITY.

13  _____        ____4/25/13____
    ANITA G. MANLEY
14  OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25